1  Stephen F. Yunker (CSB 110159)
2  Email:  sfy@yslaw.com
   655 West Broadway, Suite 1400
3  San Diego, California 92101
   Telephone:  (619) 233-5560
4  Facsimile:  (619) 233-5535

5
    Attorney for Plaintiff,
6  JILL S. MARKOWICZ

7

8                **UNITED STATES DISTRICT COURT**
              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
9              **SOUTHERN DIVISION – SANTA ANA COURTHOUSE**

10

11 JILL S. MARKOWICZ, both individually,    Case No.
   and on behalf of all others similarly situated;
12                                           **CLASS ACTION**
13        Plaintiff,
                                             **COMPLAINT FOR:**
14 v.

15 COUNTRYWIDE BANK, N.A.; BANK OF          **(1)** **Violation of the Unfair Competition**
   AMERICA, N.A.; REAL TIME                       **Law (Cal. Bus. & Prof. Code §§ 17200,**
16 RESOLUTIONS, INC.; RTR CP                      *et seq.*);
   OPPORTUNITY TRUST 1; YAKTE
17 PROPERTIES, LLC; and DOES I-XX;          **(2)** **Violation of the Fair Debt Collection**
18        Defendants.                              **Practices Act (15 U.S.C. §§ 1601, *et***
                                                  ***seq.*);**
19
                                             **(3)** **Violation of the Rosenthal Fair Debt**
20                                                 **Collection Practices Act (California**
21                                                 **Civil Code §§ 1788, *et seq.*);**
22
                                             **(4)** **Fraud; and**
23
                                             **(5)** **Breach of Contract**
24

25

26                                            **DEMAND FOR JURY TRIAL**
27

28 / / /

                                      1          Case No.

# I.    **INTRODUCTION**

1.    This case concerns yet another unfair business and unlawful debt collection practice carried out by and for the predatory lender most deeply implicated in the recent mortgage meltdown and recession – namely BofA/Countrywide.  This practice is being carried out in collusion with a debt collection company – namely RTR and its affiliates.

2.    In short, during the recession, BofA/Countrywide purported to "write off" its second mortgages on homes for which loan modifications were being allowed on its first mortgages.  The homeowners affected were assured that the second mortgages would never be enforced, and indeed they were not enforced for lengthy periods, often for years.

3.    However, in reality, BofA/Countrywide left those second mortgages unchanged, recorded, and still in effect.  Then, long after the recession ended, and the homeowners affected had regained some equity, BofA/Countrywide sold those second mortgages to RTR for collection – including by foreclosure if the homeowners could not pay.

4.    At that point, RTR was able to threaten the homeowners with loss of their equity and their home if they did not pay off the second mortgage, which by then had ballooned in cost due to months if not years of unpaid interest, penalties, and servicing charges.  All those additional costs had accrued without fair notice to the homeowners that payment would ever be due – in fact they had been told the opposite.  Nevertheless, RTR is demanding full payment of the principal balance and entire purported "default" amount.

5.    The plaintiff in this case is one of those homeowners, bushwhacked by RTR in 2017 with a second mortgage supposedly "written off" by BofA/Countrywide back in 2012, when she was assured no payment would ever be needed.  She is a single woman working as a beautician, barely able to afford her first mortgage even as modified, and completely unable to pay off or even keep current the newly resurrected second mortgage.

6.    But rather than submit to this blatant fraud, and lose her home, plaintiff instead has brought this lawsuit on her own behalf, and on behalf of all other California homeowners similarly situated.  This currently includes only those homeowners like

plaintiff who are now being threatened by RTR's attempts to collect on "written off" second mortgages of BofA/Countrywide, or who will be threatened this way in the future.

7.     Nevertheless, it is plaintiff's expectation that litigation and discovery herein, as well as public outreach, will locate other homeowners who already have either: (i) submitted to this extortionate business practice and are paying or have paid off their second mortgages; or (ii) have lost their homes to foreclosure of their second mortgages. If any such homeowners are located, and they are willing to join plaintiff as putative class representatives, then this complaint will be amended to add those claims and subclasses.

## II.     JURISDICTION AND VENUE

8.     This Court has jurisdiction of this case generally under 28 USC § 1332 based on diversity, and specifically under 28 USC § 1332(d)(2) because: (i) this matter is a putative class action in which the amount in controversy is believed to exceed $5 million, exclusive of interest and costs; and (ii) at least one member of the plaintiff class is a citizen of a state different from at least one defendant.

9.     This Court also has jurisdiction under 28 USC § 1331 for the federal statutory claims herein.

10. Under 28 USC § 1367, the Court may also exercise supplemental jurisdiction over the state law claims herein because all such claims are derived from a common nucleus of operative fact, and should be resolved in one judicial proceeding.

11.     Finally, venue is proper in this Court under 28 USC § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in this division and district, namely many of defendants' disputed "written off" second mortgages were placed on homes located in this judicial district, including on the home of the named plaintiff and putative class representative, and likewise defendants' collection activities were and are being carried out against plaintiff and others in this judicial district.

/ / /

### III.    **PARTIES**

12.    Plaintiff JILL S. MARKOWICZ ("Ms. Markowicz") is a resident of California, living and working as a beautician in Orange County.  Her home there is also her workplace, having a salon on the ground floor and living quarters on the second floor.  It is located among many similar mixed use homes at 413 29th Street, Newport Beach, California, 92663, Parcel ID Nos. 04704323-04704324 (the "Residence").

13.    Defendant COUNTRYWIDE BANK, N.A. ("Countrywide") is a national banking association headquartered in Calabasas, Los Angeles County, California.  Throughout the material time, it conducted banking operations including issuing, servicing, and selling home mortgages throughout California and nationwide.

14.    Defendant BANK OF AMERICA, N.A. ("BofA") is a national banking association headquartered in Charlotte, North Carolina.  Throughout the material time, it conducted banking operations including issuing, servicing, and selling home mortgages throughout California and nationwide.

15.    Defendant REAL TIME RESOLUTIONS, INC. ("RTR") is a Texas corporation headquartered in Dallas, Texas.  It conducts mortgage servicing and consumer debt collection operations throughout California and nationwide.

16.    Defendant RRA CP OPPORTUNITY TRUST 1 ("RRA") is a Delaware statutory trust headquartered with RTR in Dallas, Texas.  It owns or has owned second mortgages purchased from BofA/Countrywide on homes throughout California and nationwide.

17.    Defendant YAKTE PROPERTIES, LLC (Yakte") is a Delaware limited liability company headquartered with RTR and RRA in Dallas, Texas.  It owns or has owned second mortgages purchased from BofA/Countrywide on homes throughout California and nationwide.

18.    The true names, identities, and capacities of defendants DOES I-XX, inclusive, are unknown to Ms. Markowicz, who therefore sues such defendants by these fictitious names pursuant to the California Code of Civil Procedure, § 474.

19.   Ms. Markowicz is informed and believes, and thereon alleges, that all the DOE defendants are liable in some manner for the claims herein based upon their involvement in the disputed "written off" second mortgages, and/or in the efforts to collect on such mortgages.  Ms. Markowicz will amend this complaint accordingly when the DOE defendants and their capacities become known.

20.   Ms. Markowicz is further informed and believes, and thereon alleges, that – following a series of mergers and other corporate reorganizations from 2007 to 2011 – Countrywide became a branch of BofA, after which BofA became the successor-in-interest of Countrywide in all respects that are material to this case.

21.   Ms. Markowicz is further informed and believes, and thereon alleges, that RTR, RRA, and Yakte share the same ownership, management, financial arrangements, staff, offices, business address, and many if not all assets, and are essentially interchangeable in all respects that are material to this case.

22.   Ms. Markowicz is further informed and believes, and thereon alleges, that all of the defendants herein, including the DOE defendants, were at all material times the principal, agent, parent company, subsidiary company, affiliated company, employer, employee, owner, officer, director, joint venturer, aider and abettor, and/or co-conspirator of each of the remaining defendants, and were acting within the course and scope of such relationship and/or conspiracy, and with the consent and ratification of each defendant.

## IV.    FACTS COMMON TO ALL CAUSES OF ACTION

23.   Ms. Markowicz bought the Residence in July 2005 using financing provided by Countrywide.  At Countrywide's suggestion, she refinanced the Residence in October 2005.  Upon completion of that second transaction, based in part on a grossly overstated appraisal obtained by Countrywide, the Residence was encumbered by two Countrywide mortgages: (i) a first mortgage of about $2.3 million ("1st Mortgage"); and (ii) a second mortgage of $134,850 ("2nd Mortgage").

24.   The 2nd Mortgage was purported to be a home equity line of credit, but in reality it was a simple purchase money loan for which all funds were used immediately upon closing of the refinance to pay down the first mortgage.  A true and correct copy of the 2nd Mortgage is attached hereto as Exhibit A.

25.   Countrywide initially handled the servicing of both mortgages, and Countrywide promptly recorded deeds of trust to secure both mortgages.  A true and correct copy of the deed of trust securing the 2nd Mortgage is attached hereto as Exhibit B.

26.   Ms. Markowicz struggled to make her payments on the 1st and 2nd Mortgages from the start, and soon fell behind on both.  By December 2006, she was permanently behind on the 2nd Mortgage, and she made no payments at all on the 2nd Mortgage after December 2008.  By then, the mortgage crash and recession were in full force, and Ms. Markowicz was unable to pay either mortgage on her grossly overvalued Residence.

27.   At some point between 2008 and 2011, RTR replaced Countrywide as the servicer for the 2nd Mortgage.  On 3/23/11, RTR sent Ms. Markowicz a letter notifying her of that change "for your information only."  A true and correct copy of the 3/23/11 letter, including an enclosed loan statement, is attached hereto as Exhibit C.

28.   The 3/23/11 letter and statement informed Ms. Markowicz that the 2nd Mortgage principal loan balance was $118,198.62, and the payoff was $127,643.85 – implying that $9,445.23 was then overdue.  The 3/23/11 letter promised that Ms. Markowicz would begin receiving regular monthly statements from RTR, but RTR later sent few if any.

29.   At about the same time in early 2011 that RTR first surfaced, Countrywide initiated foreclosure proceedings on the First Mortgage.  That event led to protracted negotiations, an attempted short sale, and brief litigation between Countrywide and Ms. Markowicz.  During all these events, she was assisted by her brother, Joe Markowicz.

30.   All issues concerning the First Mortgage were tentatively resolved by late 2012 when Countrywide and Ms. Markowicz finally agreed on terms for a loan modification. However, the Second Mortgage was also in default at that time, and both Ms. Markowicz

/ / /

and her brother were very concerned to address and resolve the 2nd Mortgage as well.  If that was not done, Ms. Markowicz obviously was still at risk of losing the Residence.

31.    Consequently, both Ms. Markowicz and her brother questioned the Countrywide representative handling the loan modification negotiations (namely Mr. Michael Ondatyeh (phonetic), a loan officer working at the Countrywide Financial Center in Brea, California office tel no. 714-524-4703), about the 2nd Mortgage on at least two occasions in late 2012, during those negotiations.  In response, he told them:

    a.    Countywide would "charge off" and "write off" the 2nd Mortgage;

    b.    Ms. Markowicz could still pay the 2nd Mortgage to "protect her credit rating" if she was able and wanted to, but if she did not "it wouldn't matter;" and

    c.    Whether or not she paid off the 2nd Mortgage, it could never result in "anyone taking your property" or "touching your property."

32.    Based on those specific assurances by Countrywide's representative during the 1st Mortgage loan modification negotiations in late 2012, neither Ms. Markowicz nor her brother made any further efforts to address the 2nd Mortgage, or to include it in the loan modification process, or otherwise to use their own and their family's resources – then being marshalled far and wide to save the Residence – to cover the 2nd Mortgage.

33.    From mid-2011 to mid-2017, Ms. Markowicz heard nothing further from RTR concerning the 2nd Mortgage, except for occasional mailings and automated, non-specific telephone calls which she ignored.  (RTR was later sued in a class action for those improper telephone debt collection communications, and settled for $1.3 million).

34.    The only material event affecting Ms. Markowicz from 2011 to 2017 was another loan modification of her First Mortgage in 2016, which by then had been sold by Countrywide to another lender.  The 2016 modification finally left Ms. Markowicz reasonably able to afford her monthly payments on the Residence.

35.    But meanwhile, completely unknown to Ms. Markowicz, there had been other developments concerning the purportedly "written off" 2nd Mortgage:

/ / /

a. Shortly after the 2nd Mortgage was placed in 2005, it was securitized and sold by Countrywide, after which its beneficial owner was the CWHEQ Revolving Home Equity Loan Trust, Series 2005-M ("HELOC Trust").

b. As the full scope of the mortgage meltdown became known, the HELOC Trust was included a 2007 class action brought against Countrywide, BofA, and others which recovered $500 million in a settlement approved on 12/5/13 (*Luther v. Countrywide, et al.*, case No. 2:07-CV-08165-MRP, C.D. CA, and coordinated cases).

c. The subclass of claimants in *Luther* which included the HELOC Trust was allocated $50 million of the settlement, which worked out to an estimated payout to the Trust investors of 16 cents per $1,000.00 face value of the securitized mortgages. In other words, the settlement value of the 2nd Mortgage paid by BofA/Countrywide and others – face value $134,850 – was about $22.

d. Nevertheless, in about July 2016, Countrywide re-acquired its ownership interest in the 2nd Mortgage. One year later, in about July 2017, Countrywide transferred its interest to RRA – undoubtedly along with a portfolio of many similar loans. In turn, RRA promptly transferred that interest to Yakte.

e. On 7/24/17, RTR recorded the transfers from Countrywide to RRA, and from RRA to Yakte. True and correct copies of those transfers are attached hereto as Exhibits D and E.

36.   Ms. Markowicz's first notice of these developments came shortly after the July 2017 transfers of the 2nd Mortgage, when she got a certified letter from RTR demanding that the 2nd Mortgage be brought current, and threatening foreclosure. Based on the assurances she had gotten from Countrywide in 2012, she assumed that RTR was bluffing, or mistaken, or acting without BofA/Countrywide's authority, or otherwise to be ignored.

37.   Then, on 11/7/17, RTR filed a notice of default on the 2nd Mortgage, and began foreclosure proceedings against the Residence. The foreclosure filings stated that RTR

was seeking recovery of the full original loan amount of $134,850, despite RTR having issued a statement in 2011 (Ex. C) showing a principal balance of only $118,198.62. Likewise, those filings stated that RTR was also claiming a default amount of $52,898, despite the 2011 statement showing that only $9,445.23 was then due.  A true and correct copy of the Notice of Default is attached as Exhibit F.

38.   For the next six months, first Ms. Markowicz, then her brother, and then her counsel attempted to reason with RTR, repeatedly pointing out Countrywide's assurances that the 2nd Mortgage had been written off, that Countrywide therefore had no remaining claim on the Residence, that RTR was standing in Countrywide's shoes, that Countrywide was the poster child for fraud in the mortgage meltdown, and that the 2nd Mortgage was essentially worthless and had been for years – all realities that were obvious to RTR as matters of common knowledge in the mortgage industry, and/or as a result of RTR's due diligence when acquiring the BofA/Countrywide portfolio that included the 2nd Loan.

39.   Nevertheless, RTR acknowledged none of those realities, and only responded that there was nothing to that effect in the mortgage documents or the record title.  RTR also first refused to admit RRA's and Yakte's acquisition of the 2nd Mortgage, and then refused to provide documentation concerning RTR's due diligence or the terms of sale.

40.   Instead, RTR offered only to reduce the loan payoff by 1% initially, and then by about 3% when Ms. Markowicz threatened suit in mid-2018.  RTR also provided widely varying accountings of the amounts supposedly due under the 2nd Mortgage:

   a. Already noted above is RTR's initial claim that the total payoff due in March 2011 was $127,643.85 (Ex. C);

   b. Already noted above is RTR's claim in the Notice of Default that the total payoff due in November 2017 was $187,748 (Ex. D).

   c. On 2/15/18, RTR sent Ms. Markowicz a letter with an account statement that the total payoff then due was $172,946.24 (a true and correct copy of this statement is attached hereto as Exhibit G).

/ / /

d.  RTR's first settlement proposal on 3/5/18 – the 1% reduction – stated that the new total payoff due was $154,510.47 (a true and correct copy of this proposal is attached hereto as Exhibit H).

e.  RTR's second and last settlement proposal on 5/15/18 – the 3% reduction – stated that the new total payoff due was $149,450.07 (a true and correct copy of this proposal is attached hereto as Exhibit I).

f.  None of these numbers is consistent with any other.  Moreover, prior to Ms. Markowicz's threat of litigation in May 2018, none of these numbers was supported with back-up documentation that matched or explained them.

g.  The only back-up documentation ever provided to Ms. Markowicz before the threat of litigation was BofA's accounting ending in 2009, and RTR's accounting ending in 2017, neither of which supported RTR's payoff amounts (true and correct copies are attached hereto as Exhibits J and K).

41.  The lowest payoff number ever stated by RTR was the $127,643.85 initially claimed when RTR first surfaced in March 2011 (Ex. C).  If Ms. Markowicz had paid that amount – i.e., the full face value of the loan principal and the entire default amount then being claimed by RTR – it would have constituted about a 62,500% increase over what the HELOC Trust investors got for her loan in the *Luther* settlement.

42.  Because RTR has refused to provide documentation concerning what it paid Countrywide/BofA for Ms. Markowicz's 2nd Mortgage, and what additional amounts must be paid to BofA/Countrywide, if any, it remains for litigation and discovery to determine:

a.  What percentage gain RTR is seeking from Ms. Markowicz;

b.  What percentage gain RTR is seeking from all other similarly situated persons in California; and

c.  What BofA/Countrywide has been and will be paid for these transactions and collection efforts as well.

43.  Ms. Markowicz is informed and believes, and thereon alleges, that BofA not only is paid a purchase price for the disputed second mortgages by RTR and its affiliates, but

also that BofA shares in the funds recovered by RTR from the homeowners subject to collection on such mortgages.

44.   In summary, the facts common to all causes of action herein, which are known to have occurred with respect to Ms. Markowicz, and which can be reasonably inferred to have occurred to many other California homeowners similarly situated, are as follows:

a.  BofA/Countrywide agreed to modify the first mortgages on residences having two Countrywide mortgages in place, but assured the homeowners that the second mortgages would be "written off" and never enforced;

b.  Months or years later (five years later for Ms. Markowicz), BofA/Countrywide sold the "written off" second mortgages to RTR for enforcement and collection;

c.  During the lengthy time period between the assurances and the sales (again, five years for Ms. Markowicz), there were no meaningful collection efforts on the "written off" second mortgages, nor regular statements of purported accruals;

d.  After RTR bought the "written off" second mortgages, and belatedly resumed collection efforts, RTR demanded full repayment including all accrued charges;

e.  Full repayment of such "written off" mortgages is fantastically higher than: (i) the market value of such loans as determined in litigation; and (ii) any likely purchase price paid by RTR – even assuming such mortgages are enforceable at all; and

f.  BofA/Countrywide is probably paid by RTR not only a purchase price for the disputed second mortgages, but is also sharing in in the funds recovered by RTR from the homeowners subject to collection on such mortgages.

## V.    CLASS ACTION ALLEGATIONS

45.   Ms. Markowicz has brought this action – one behalf of herself and all others similarly situated – as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The putative class which Ms. Markowicz seeks to represent is composed of and defined as follows:

a. All current California homeowners who obtained first and second mortgages from BofA/Countrywide on or after 1/1/2000; and

b. Who obtained a loan modification from BofA/Countrywide of the first mortgage only, while the second mortgage was still in effect and in default; and

c. Who experienced no documented collection efforts on the second mortgage for a period of at least 180 days after the loan modification was final, during which period the second mortgage remained in default; and

d. Who at any time after that 180-day period, but no more than four years before this complaint was filed on 8/1/2018, experienced documented collection efforts on the second mortgage by RTR or its affiliates; and

e. Who have not compromised or otherwise resolved their purported debt on the second mortgage before the final adjudication or settlement of this lawsuit.

Excluded from this class are those who are or were employees, officers, directors, owners, members, or otherwise affiliated with any of the defendants during the class period.

46. This action has been brought and may properly be maintained as a class action on behalf of the putative class pursuant to Rule 23 for the following reasons:

a. **Numerosity**:  Based on the tens of thousands of first and second mortgages written by Countrywide on the same houses prior to and during the initial stages of the mortgage meltdown (numerous because the bogus "HELOC" second mortgage was a common Countrywide technique to enable under-qualified borrowers to amass sufficient funds to buy or keep over-valued houses beyond their means), Ms. Markowicz is informed and believes, and thereon alleges, that the class definition will include hundreds if not thousands of California homeowners.  The exact number of such potential class members is unknown, but can readily be established by BofA/Countrywide's and RTR's own records of their mortgage-holders and collection debtors.  Considering that the wrongful acts of defendants have increased each of the potential class members' purported debts on their second mortgages from $0 to the full principal and purported default

amounts accrued – easily five to six figures each – such aggregated damages should exceed the $5 million jurisdictional limit of 28 USC § 1332(d)(2).

b. **<u>Predominance and Commonality</u>**:  The questions of law and fact common to all members of the class predominate over any question of law or fact limited to any individual member of the class, including Ms. Markowicz.  The class definition avoids any need for individual inquiry as to representations – verbal or otherwise – made by or for BofA/Countrywide concerning the enforceability of its second mortgages during the modification of its first mortgages.  Rather, the class definition instead relies on the documented action or inaction of collection efforts during the material time, to be proven by defendants' own records.  The resulting common questions of law and fact include, but are not limited to, the following:

i.    Whether the claims herein arise out of home loan procedures, mortgages, deeds of trust, loan modification contracts, transfers of interests in mortgages, collection notices, and documented collection efforts that are standard, routine, and based on defendants' typical policies and procedures;

ii.   Whether BofA/Countrywide is barred from attempting to enforce or collect on the second mortgages held by homeowners within the class definition;

iii.  Whether RTR and its affiliates legally and equitably stand in the shoes of BofA/Countrywide under the facts and circumstances alleged herein, and are likewise barred from attempting to enforce or collect on the second mortgages held by homeowners within the class definition;

iv.   Whether – assuming the principal amounts of the second mortgages held by homeowners within the class definition are enforceable or collectible to any extent – any of the purported accrued "default" amounts are likewise collectible under the facts and circumstances alleged herein; and

v.    Whether – assuming the second mortgages held by homeowners within the class definition are enforceable or collectible to any extent – the market

/ / /

value and/or price paid by RTR to BofA/Countrywide for such mortgages are lawful and/or equitable factors in determining the lawful amount owed.

c. **Typicality**:  Ms. Markowicz's claims against defendants are typical of all class members, and arise out of substantially similar facts and legal theories shared with all class members as alleged herein.  Moreover, Ms. Markowicz is informed and believes, and thereon alleges, that defendants' material business practices involve essentially identical treatment of all class members using home loan procedures, mortgages, deeds of trust, loan modification contracts, transfers of interests in mortgages, collection notices, and documented collection efforts that are standard, routine, and based on defendants' typical policies and procedures.

d. **Adequacy of Class Representative**:  Ms. Markowicz is an intelligent and determined person who is outraged to have her home ownership threatened by the resurrection of a mortgage debt explicitly abandoned by her lender, and then never acted on for five years by her lender, its successors, or its agents.  She is aware of her duties to the class, she is committed to fairly and adequately protecting the interests of all members of the class, and she has no known conflict of interest with any member of the class.  Finally, she has selected experienced and well-funded counsel to represent her and the class.

e. **Adequacy of Class Counsel**:  Current class counsel has substantial experience in complex mortgage, real estate, business, and consumer class action litigation, and has litigated statewide and nationwide consumer class actions involving mortgage servicing and debt collection.  Moreover, current class counsel has regularly associated with other experienced plaintiff class counsel in such cases, and anticipates doing the same in this case if the litigation is prolonged.  Finally, current class counsel has agreed to: (i) represent Ms. Markowicz and the putative class on a contingent basis; (ii) advance all costs to litigate this action; and (iii) be compensated for fees and expenses only as approved by this Court.

/ / /

f. **Superiority**:  A class action to resolve the issues herein is superior to all other available means for the fair and efficient adjudication of this case.  This is so because the claims herein arise out of substantially the same facts and circumstances for all class members including Ms. Markowicz, will require proof of substantially the same material evidence, and will require application of the same law.  Moreover, individual joinder of all members of the class is not practical, and many potential class members may not be able to afford the time and expense of bringing suit individually in any event – even assuming they are aware of their claims.  This class action offers a single forum for adjudicating all issues of the class simultaneously, efficiently, without the duplication of effort and expense entailed in separate actions, and without risk of inconsistent results.

g. **Manageability**:  There are no known or foreseeable legal, factual, or practical issues in this case that will cause any management problem not routinely overcome by courts commonly adjudicating class actions.  To the contrary, identification of class members, calculation of damages, and administration of any class fund or other monetary award should be relatively simple because all those tasks will rely on the business records of BofA/Countrywide and RTR.  Both of those defendants are large and sophisticated entities doing much business in California, and are doing so in the heavily regulated industries of mortgage lending and debt collection.  Those industries require thorough record-keeping, standard forms and practices, and careful accountability.

## VI.    CAUSES OF ACTION

**First Cause of Action for Violation of the Unfair Competition Law Against All Defendants**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

47.  Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully set forth herein.

48.   The Unfair Competition Law of California ("UCL") is codified in Cal. Bus. & Prof. Code §§ 17200, *et seq*.  The UCL defines unfair business competition as any "unlawful, unfair or fraudulent" business act or practice adversely affecting any member of the public, and regardless of its impact on competition as between business entities.

49.   A business act or practice is "unlawful" under the UCL if it violates any established state or federal law.

50.   Defendant RTR's actions herein are unlawful in that they violate the federal Fair Debt Collection Practices Act (15 U.S.C. §§ 1601, *et. seq*., "FDCPA") and the California Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code §§ 1788, *et seq*., "RFDCPA").

51.   Defendants' actions in violation of the FDCPA and RFDCPA are carried out by RTR in the attempt to enforce and collect on the disputed second mortgages, with the knowledge and consent of all other defendants, and in conspiracy with them, as follows:

a.   RTR makes the false and misleading representation and/or implication that the character, amount, and legal status of the second mortgage debts in dispute herein are fixed and undisputed under their mortgage loan and deed of trust documents, without disclosing or conceding that: (i) BofA/Countrywide agreed never to enforce such debts and/or did not enforce them during the material time; (ii) RTR was aware of such agreement and/or lack of enforcement before acquiring such debts from BofA/Countrywide; and (iii) all of RTR's rights and interests in such debts are derived from and limited to BofA/Countrywide's rights and interests.

b.   RTR makes the false and misleading representation and/or implication that such debts have been turned over by B&A/Countrywide to an innocent purchaser for value, and thus a purchaser entitled to rely solely on the mortgage loan and deed of trust documents – namely RTR itself – without conceding or disclosing that: (i) BofA/Countrywide agreed never to enforce such debts and/or did not enforce them during the material time; (ii) RTR was aware of such agreement and/or lack of enforcement before acquiring such debts from BofA/Countrywide; and (iii) all of

RTR's rights and interests in such debts are derived from and limited to BofA/Countrywide's rights and interests.

c. RTR makes the false and misleading representation and/or implication that such debts are in a certain and exact amount specified by the mortgage agreements, and comprised of exact figures for mortgage principal and accrued default amount, when in fact RTR's own computations and representations concerning the total amount owed vary greatly, are not consistent with each other, and are unsupported by adequate documentation.

52. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

53. Defendants' unfair actions are carried out by each defendant in the attempt to enforce and collect on the disputed second mortgages in the case of RTR and its affiliates, or otherwise profit from them in the case of BofA/Countrywide, with the knowledge and consent of all other defendants, and in conspiracy with them, as follows:

a. BofA/Countrywide acts unfairly by assuring homeowners that the disputed second mortgages will not be enforced or collected on, and by not enforcing or collecting on such mortgages for months if not years, and then selling such mortgages to RTR and its affiliates for present and future profit, with the knowledge and expectation that RTR will enforce and collect on such mortgages.

b. RTR and its affiliates act unfairly by stepping into BofA/Countrywide's shoes concerning the disputed second mortgages, and then seeking to enforce and collect on such mortgages in full despite their known history, and despite such mortgages having minimal market value and cost to RTR and its affiliates.

54. A business act or practice is "fraudulent" under the UCL if it deceives or is likely to deceive members of the public.

55. Defendants' fraudulent actions are carried out by each defendant in the attempt to enforce and collect on the disputed second mortgages in the case of RTR and its affiliates,

or otherwise profit from them in the case of BofA/Countrywide, with the knowledge and consent of all other defendants, and in conspiracy with them, as follows:

    a.  BofA/Countrywide acts fraudulently by assuring homeowners that the disputed second mortgages will not be enforced or collected on, and by not enforcing or collecting on such mortgages for months if not years, and then selling such mortgages to RTR and its affiliates for present and future profit, with the knowledge and expectation that RTR will enforce and collect on such mortgages.

    b.  RTR and its affiliates act fraudulently by stepping into BofA/Countrywide's shoes concerning the disputed second mortgages, and then seeking to enforce and collect on such mortgages in full despite their known history, and despite such mortgages having minimal market value and cost to RTR and its affiliates

56.  By means of these violations of the UCL, defendants are attempting to obtain money and/or title to foreclosed homes from all members of the plaintiff class, and such members may be irreparably harmed or otherwise denied a complete and effective remedy for such violations if they are not permanently enjoined.

57.  In the event that the class is not certified or is withdrawn, and Ms. Markowicz proceeds with this action unilaterally and solely on her own behalf, she will still be entitled under the UCL to seek a permanent injunction against enforcement of all material second mortgages by RTR for the benefit of the public at large pursuant to the authority of *McGill v. Citibanc* (2015) 2 Cal. 5th 945, and she hereby confirms her intent to do so.

**Second Cause of Action for Violation of the Fair Debt Collection Practices Act Against Defendant RTR**
**(15 U.S.C. §§ 1601, *et seq.*)**

58.  Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully set forth herein.

59.  The federal Fair Debt Collection Practices Act (15 U.S.C. §§ 1601, *et. seq.*, "FDCPA") prohibits unfair and unlawful debt collection practices.

60. RTR violates the FDCPA by its actions alleged herein as follows:

a. RTR makes the false and misleading representation and/or implication that the character, amount, and legal status of the second mortgage debts in dispute herein are fixed and undisputed under their mortgage loan and deed of trust documents, without disclosing or conceding that: (i) BofA/Countrywide agreed never to enforce such debts and/or did not enforce them during the material time; (ii) RTR was aware of such agreement and/or lack of enforcement before acquiring such debts from BofA/Countrywide; and (iii) all of RTR's rights and interests in such debts are derived from and limited to BofA/Countrywide's rights and interests.

b. RTR makes the false and misleading representation and/or implication that such debts have been turned over by B&A/Countrywide to an innocent purchaser for value, and thus a purchaser entitled to rely solely on the mortgage loan and deed of trust documents – namely RTR itself – without conceding or disclosing that: (i) BofA/Countrywide agreed never to enforce such debts and/or did not enforce them during the material time; (ii) RTR was aware of such agreement and/or lack of enforcement before acquiring such debts from BofA/Countrywide; and (iii) all of RTR's rights and interests in such debts are derived from and limited to BofA/Countrywide's rights and interests.

c. RTR makes the false and misleading representation and/or implication that such debts are in a certain and exact amount specified by the mortgage agreements, and comprised of exact figures for mortgage principal and accrued default amount, when in fact RTR's own computations and representations concerning the total amount owed vary greatly, are not consistent with each other, and are unsupported by adequate documentation.

61. By means of these violations of the FDCPA, RTR is attempting to obtain money and/or title to foreclosed homes from all members of the plaintiff class, and such members may be irreparably harmed or otherwise denied a complete and effective remedy for such violations if they are not permanently enjoined.

62.   Due to these violations of the FDCPA, RTR is liable for all civil damages and penalties as authorized by 15 U.S.C. § 813 for the class, including but not limited to actual damages, penalties equal to the lesser of $500,000 or 1% of RTR's net worth, costs, and legal fees.

### Third Cause of Action for Violation of the Rosenthal Fair Debt Collection Practices Act Against Defendant RTR
### (Cal. Civil Code §§ 1788, *et seq.*)

63.   Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully set forth herein.

64.   The California Rosenthal Fair Debt Collection Practices Act (Cal. Civil Code §§ 1788, *et. seq.*, "RFDCPA") prohibits unfair and unlawful debt collection practices.

65.   RTR violates the RFDCPA by its actions alleged herein as follows:

a. RTR makes the false and misleading representation and/or implication that the character, amount, and legal status of the second mortgage debts in dispute herein are fixed and undisputed under their mortgage loan and deed of trust documents, without disclosing or conceding that: (i) BofA/Countrywide agreed never to enforce such debts and/or did not enforce them during the material time; (ii) RTR was aware of such agreement and/or lack of enforcement before acquiring such debts from BofA/Countrywide; and (iii) all of RTR's rights and interests in such debts are derived from and limited to BofA/Countrywide's rights and interests.

b. RTR makes the false and misleading representation and/or implication that such debts have been turned over by B&A/Countrywide to an innocent purchaser for value, and thus a purchaser entitled to rely solely on the mortgage loan and deed of trust documents – namely RTR itself – without conceding or disclosing that: (i) BofA/Countrywide agreed never to enforce such debts and/or did not enforce them during the material time; (ii) RTR was aware of such agreement and/or lack of enforcement before acquiring such debts from BofA/Countrywide; and (iii) all

of RTR's rights and interests in such debts are derived from and limited to BofA/Countrywide's rights and interests.

c. RTR makes the false and misleading representation and/or implication that such debts are in a certain and exact amount specified by the mortgage agreements, and comprised of exact figures for mortgage principal and accrued default amount, when in fact RTR's own computations and representations concerning the total amount owed vary greatly, are not consistent with each other, and are unsupported by adequate documentation.

66.    By means of these violations of the RFDCPA, RTR is attempting to obtain money and/or title to foreclosed homes from all members of the plaintiff class, and such members may be irreparably harmed or otherwise denied a complete and effective remedy for such violations if such violations are not permanently enjoined.

67.    Due to these violations of the RFDCPA, RTR is liable for all civil damages and penalties as authorized by Cal. Civil Code § 1788.3 for the class, including but not limited to actual damages, costs, and legal fees.

**Fourth Cause of Action for Fraud Against BofA and Countrywide**

68.    Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully set forth herein.

69.    During the negotiations for modification of the First Mortgage in early 2012, the authorized representative of Countrywide in those negotiations represented to Ms. Markowicz and her brother that:

a. Countywide would "charge off" and "write off" the 2nd Mortgage;

b. Ms. Markowicz could still pay the 2nd Mortgage to "protect her credit rating" if she was able and wanted to, but if she did not "it wouldn't matter;" and

c. Whether or not she paid off the 2nd Mortgage, it could never result in "anyone taking your property" or "touching your property."

70.   Based on those specific representations by Countrywide's authorized representative, neither Ms. Markowicz nor her brother made any further efforts to address the 2nd Mortgage, or to include it in the loan modification process, or otherwise to use their own and their family's resources – then being marshalled far and wide to save the Residence – to cover the 2nd Mortgage.  Instead, they reasonably relied on those representations to their detriment, which was first revealed to them in late 2017 when foreclosure proceedings based on the 2nd Mortgage were initiated.

71.   Ms. Markowicz is informed and believes, and thereon alleges, that those representations were false, and/or they were false promises, and/or they concealed the true intent of Countrywide, and that they were known to Countrywide's representative to be false and incomplete at the time made.

72.   Ms. Markowicz is further informed and believes, and thereon alleges, that such misrepresentations, false promises, and/or concealments were authorized, adopted, or otherwise ratified by BofA and Countrywide either at the time made, or at the time BofA/Countrywide accepted the fruits of this fraud – i.e., when the Second Mortgage was sold to RRA for enforcement by RTR, with BofA/Countrywide to share in the collection proceeds.

73.   Ms. Markowicz is further informed and believes, and thereon alleges, that other class members have either been given similar misrepresentations, false promises, and/or concealments concerning their own second mortgages during their negotiations for loan modifications of their first mortgages, or alternatively that all class members were intentionally given the same understanding by virtue of the non-enforcement of their second mortgages while in default for 180 days or more after their loan modification.

74.   As a result of these frauds by BofA/Countrywide – whether by active misrepresentation, false promise, concealment, or intentional inaction to lull homeowners into a mistaken sense of security concerning their second mortgages – Ms. Markowicz and all other class members are at risk of paying money and/or losing title to foreclosed homes, and such members may be irreparably harmed or otherwise denied a complete and

effective remedy for such frauds if BofA/Countrywide and its co-conspirator RTR are not permanently enjoined from taking advantage of them.

75.   Alternatively, should Ms. Markowicz and all other class members be forced to pay money or lose title to foreclosed homes due to these frauds, then BofA/Countrywide is liable for all resulting damages suffered by Ms. Markowicz and the class.

76.   Moreover, such frauds were committed in conscious disregard of the rights of Ms. Markowicz and all other class members, and constitute oppression, fraud, and malice against them, such that they are entitled to recover punitive damages from BofA/Countrywide in an amount sufficient to punish and set an example of those defendants pursuant to California Civil Code § 1780(a)(4).

**Fifth Cause of Action for Breach of Contract Against BofA and Countrywide**

77.   Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully set forth herein.

78.   During the negotiations for modification of the First Mortgage in early 2012, the authorized representative of Countrywide in those negotiations represented to Ms. Markowicz and her brother that:

   d.   Countywide would "charge off" and "write off" the 2nd Mortgage;

   e.   Ms. Markowicz could still pay the 2nd Mortgage to "protect her credit rating" if she was able and wanted to, but if she did not "it wouldn't matter;" and

   f.   Whether or not she paid off the 2nd Mortgage, it could never result in "anyone taking your property" or "touching your property."

79.   In the alternative to the preceding Cause of Action for Fraud, Ms. Markowicz alleges it is possible that these representations were made in good faith, and that they were authorized, adopted, or otherwise ratified by BofA and Countrywide at the time made, or by virtue of BofA/Countrywide's later five years of inaction enforcing the 2nd Mortgage while it was in default, and that Ms. Markowicz provided good consideration for the resulting bargain by entering into the loan modification for the First Mortgage.

/ / /

80.   Assuming good faith and contemporaneous ratification by BofA/Countrywide, such representations became a binding oral contract between Ms. Markowicz and BofA/Countrywide in 2012.  Or, assuming later inaction rather than contemporaneous ratification was the basis of  BofA/Countrywide's consent, such representations became a binding contract in fact between Ms. Markowicz and BofA/Countrywide thereafter.

81.   Ms. Markowicz is informed and believes, and thereon alleges, that other class members have either been given similar good faith representations concerning their own second mortgages during their negotiations for loan modifications of their first mortgages – thus giving rise to a binding oral contract – or alternatively they were given the same understanding by virtue of the non-enforcement of their second mortgages while in default for 180 days or more after their loan modification – thereby giving rise to a binding contract in fact.

82.   Under either basis for inception of these contracts, BofA/Countrywide's later sales of the second mortgages to RRA for enforcement by RTR constituted a breach of these contracts, and a denial of the benefits of their loan modification bargains to Ms. Markowicz and all other class members.

83.   As a result of these breaches of contract by BofA/Countrywide, Ms. Markowicz and all other class members are at risk of paying money and/or losing title to foreclosed homes, and such members may be irreparably harmed or otherwise denied a complete and effective remedy for such breaches if BofA/Countrywide and RTR are not permanently enjoined from taking advantage of the breaches.

84.   Alternatively, should Ms. Markowicz and all other class members be forced to pay money or lose title to foreclosed homes due to these breaches of contract, then BofA/Countrywide is liable for all resulting damages suffered by Ms. Markowicz and the class.

/ / /

/ / /

/ / /

## VI.    <u>PRAYER FOR RELIEF</u>

Wherefore, Ms. Markowicz prays on her own behalf, and on behalf of all others similarly situated with her, for the following relief:

1.    For an order determining that this case may be maintained as a class action, appointing Ms. Markowicz as plaintiff class representative, and appointing her counsel as counsel for the class;

2.    For an order enjoining the enforcement and collection of the disputed second mortgages by RTR;

3.    For an order enjoining the unlawful business practices of all defendants;

4.    For monetary damages according to proof;

5.    For punitive damages according to proof;

6.    For costs of suit and legal fees as permitted by law; and

7.    For all other relief as the Court deems just and proper.

## VII.    <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, for herself and for all members of the plaintiff class, hereby demands a jury trial on all Causes of Action and/or issues for which such trial is available under applicable law.

Dated: July 2, 2018

By: _____

Stephen F. Yunker
Attorney for Plaintiff
Email:  sfy@yslaw.com